UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIAM CARTER KING, )
)
)
)
Plaintiff, )
)
)
VS. ) No. 19-1202-JDT-cgc
)
)
CORECIVIC, )
)
)
Defendant. )

ORDER DENYING MOTION FOR EMERGENCY INJUNCTION OR
TEMPORARY RESTRAINING ORDER, DISMISSING COMPLAINT,
AND GRANTING LEAVE TO AMEND

On September 10, 2019, Plaintiff William Carter King, who is incarcerated at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee, filed a document that he labeled a "Complaint/Request for TRO/Emergency Injunction/Appoint Counsel or Guardian Ad [Litem]Application to Proceed in For-ma Pauper." (ECF No. 1.) Because King did not also file an application to proceed *in forma pauperis* and a copy of his trust account statement for the preceding six months, the Court ordered him to do so within thirty days. (ECF No. 3.) On October 3, 2019, King filed the necessary financial paperwork, and this Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28

U.S.C. §§ 1915(a)-(b). (ECF No. 6.) King sues CoreCivic, a private company that maintains the HCCF and other facilities.

King alleges that he suffers from mental health issues, has been placed on suicide watch six times while at HCCF, and has been transferred to a hospital for treatment four times. (ECF No. 1 at PageID 1.) He alleges that in November 2018, he sent a complaint and an application to proceed *in forma pauperis* to the U.S. District Court for the Middle District of Tennessee in Nashville, but the documents never arrived. (*Id.*) On August 11, 2019, he told HCCF officials that he was feeling suicidal and asked for medical help. (*Id.*) He alleges that an unnamed sergeant told him "to do what I felt like [I] needed to do" but never contacted mental health services or had King placed on suicide watch. (*Id.* at PageID 1-2.)

King states that on the same day he swallowed eleven blood thinner pills and nine razors and cut his arm in an attempt to bleed out. (*Id.* at PageID 2.) He was taken for medical attention, where Nurse Hardin (who is not named as a defendant) stopped the bleeding and asked him why he was attempting suicide. (*Id.*) King alleges that he told Hardin about an incident that occurred on March 17, 2018, while he was an inmate at the Trousdale Turner Correctional Complex (TTCC), which incident also was the subject of a Prison Rape Elimination Act (PREA) report.[1] (*Id.*) He also told Hardin about an unnamed doctor that had seen him for a chronic care visit in November 2016. (*Id.*) According to

---

[1] King provides no additional information about this incident.

King, the doctor told King he was concerned about King's "possible exposure to harmful even deadly toxins" causing scarring and possible nerve damage. (*Id.*) The doctor allegedly told King that he might end up in a wheelchair or die because of his mystery condition. (*Id.*) Before King could be further evaluated, however, that doctor stopped working at the TTCC. (*Id.*) King was scheduled for another chronic care visit in February 2017 but was never taken for the appointment. (*Id.*) He filed a grievance about the missed visit. (*Id.*) King told Hardin that no one cared about the March 17, 2018, incident or his medical health, and he "would rather just kill myself and stop the torture." (*Id.*)

Hardin looked at King's medical files and allegedly told King, "I'm not big into conspiracy theories but something is defiantly [sic] wrong with your files" and that documents were missing in a manner suggesting someone had intentionally removed them. (*Id.* at PageID 3.) Hardin told King that his file contained nothing about the statements made by the doctor at TTCC or the PREA report.

King further alleges that on September 6, 2019, while Hardin was changing a dressing on his leg, King asked what he should do about the missing medical files. (*Id.*) King told Hardin he was "very afraid that I would end up killing myself over everything and no one helping me and making matters worse . . . someone had removed orders and doctors notes from my file." (*Id.*) Hardin told King to contact an attorney or have his family contact one and made him promise not to hurt himself. (*Id.*) King recounts additional incidents between October 2018 and April 2019 where his previous attorney made appointments to visit with him via video conference, but CoreCivic officials allegedly denied the visits. (*Id.*) King alleges that he fired the attorney because of the

missed visits, represented himself at trial, and pleaded guilty to the maximum sentence in his criminal matter without attempting to negotiate a plea agreement. (*Id.*)

King seeks a TRO or an injunction ordering prison officials to contact the Tennessee Health Department regarding his concern that he has been exposed to toxins and to order that he be evaluated. (*Id.*) He also seeks counsel and/or a guardian ad litem to find the missing documents from his medical file and the results of the March 17, 2018, PREA report. (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

King labels his filing as both a complaint and a request for a TRO or emergency injunction. He asks the Court to take immediate action to order him an evaluation and appoint counsel to help him find his missing documents.

To the extent King sought to file a civil complaint, the basis of his complaint is not clear. King lists only CoreCivic as a Defendant but does not specify what actionable conduct CoreCivic has taken. His only allegations against CoreCivic are that it denied him attorney visits, which led to him firing his attorney, representing himself at trial, and pleading guilty. King's allegations could be construed as asserting a violation of his Sixth Amendment right to counsel or his Fourteenth Amendment right to access the court through contact attorney visits. *See Johnson v. Cnty. of Wayne*, No. 08-CV-10209, 2008 WL

5

4279359, at *4 (E.D. Mich. Sept. 16, 2008) (citing *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993)). To the extent the Court may construe his allegations as such, his claim would likely fall under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

King appears to sue CoreCivic, a private company that "performs the traditional state function of operating a prison [and therefore] acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, King "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged

6

deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

King alleges that on four occasions "CoreCivic officials" would not allow him video visits with his attorney, which could violate his right to counsel or to access the courts. However, King does not allege that the CoreCivic officials denied his attorney visits pursuant to a policy or custom of CoreCivic and that the policy was the "moving force" behind the alleged violation of his constitutional rights. His allegations do not state a claim against CoreCivic.

Moreover, to the extent King seeks to plead a violation of his Sixth Amendment right to counsel, his claim cannot be brought in an action under § 1983. The Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). Success on the merits of King's claim that he was denied the right to an attorney would "necessarily demonstrate the invalidity of" his conviction and sentence. However, King has not alleged that his conviction has been set aside or otherwise invalidated. He is therefore barred from bringing his Sixth Amendment claim in this lawsuit.

King also requests an emergency injunction. In determining whether to issue a TRO or emergency injunction, the Court must balance four factors: (1) the movant's likelihood

of success on the merits, (2) whether the movant will suffer irreparable injury without the injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the public interest is best served by granting the injunction. *See Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006)).

Although King alleges that he will suffer irreparable self-injury without the injunction, he does not address any other factor. The Court has determined that his access-to-courts claim against CoreCivic, if he indeed intends to assert such a claim, fails to plead a cause of action under § 1983. King therefore cannot demonstrate a likelihood of success on the merits. It is not clear whether granting the injunction will cause substantial harm to others, and King does not assert how the public interest would be best served by granting him the injunction. These factors weigh against granting an injunction.

King also must adhere to Federal Rule of Civil Procedure 65. That Rule provides that the "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:"

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). King's filing is neither a verified complaint nor an affidavit, and he does not certify that he has given, or attempted to give, notice to the opposing party. His request for a TRO or emergency injunction is therefore DENIED.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that King should be given an opportunity to amend his complaint.

In conclusion, King's complaint is DISMISSED for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one (21) days after the date of this order.

King is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If King fails to file an amended

complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE